# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DARRELL E. MURRAY,          )
                            )
      Plaintiff,          )
                            )
v.                          )    Case No. CIV-15-459-SPS
                            )
NANCY A. BERRYHILL,         )
Acting Commissioner of the Social  )
Security Administration,[1] )
                            )
      Defendant.          )

## OPINION AND ORDER

The claimant Darrell E. Murray requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on February 8, 1962, and was fifty-two years old at the time of the administrative hearing (Tr. 150). He has at least an eighth grade education,[3] and has no past relevant work (Tr. 59). The claimant alleges that he has been unable to work since an amended onset date of March 15, 2012, due to back issues, arthritis, gout, problems with his thyroid, mental illness, and a nervous disorder (Tr. 167).

### Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on April 12, 2012. The claimant's application was denied. ALJ Luke Liter conducted an administrative hearing and found that the claimant was not disabled in a written decision dated June 27, 2014 (Tr. 15-28). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

---

[3] Claimant reported on his Disability Report and to Dr. Paris, Dr. Danaher, and Dr. Schatzman that he completed ninth grade (Tr. 168, 252, 286, 290). The claimant testified at the March 17, 2014, hearing that he completed eighth grade (Tr. 42).

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work, *i. e.*, he could lift ten pounds frequently and twenty pounds occasionally, and sit/stand/walk for six hours in an eight-hour workday with occasional balancing, kneeling, stooping, crouching, and crawling (Tr. 20). The ALJ further found the claimant was unable to tolerate exposure to hazards such as unprotected heights or dangerous moving machinery parts (Tr. 20). The ALJ limited the claimant to simple and some complex tasks, defined as semi-skilled work with a specific vocational preparation of three to four (Tr. 20). The ALJ further limited the claimant to no contact with the public, and superficial contact, defined as brief and cursory, with co-workers and supervisors (Tr. 20). The ALJ concluded that the claimant was not disabled because there were jobs in the regional and national economies that he could perform, *i. e.*, label coder, merchandise marker, and housekeeping/cleaner (Tr. 27-28).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess his RFC and finding that there was work he could perform, (ii) by improperly analyzing the medical and nonmedical source evidence, and (iii) by improperly assessing his credibility. The Court finds that the ALJ did err in determining the claimant's RFC, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant's major depressive disorder, anxiety disorder, obesity, mild lumbar spine spurring, and mild acromioclavicular joint arthropathy were

severe impairments, and that his history of a single seizure was non-severe (Tr. 17). The relevant medical record reveals the claimant presented to Dr. Larry Sumner on May 19, 2010, for, *inter alia,* shoulder and neck pain (Tr. 280). Dr. Sumner noted the claimant's right shoulder was tender to abduction with decreased range of motion and crepitus, and that he had decreased range of motion in his neck (Tr. 280). Dr. Sumner instructed the claimant to not use his right arm for a few weeks (Tr. 280). An x-ray of the claimant's lumbar spine taken July 25, 2012, was unremarkable except for mild endplate spurring (Tr. 263). An x-ray of the claimant's right shoulder taken the same day revealed mild acromioclavicular joint arthropathy (Tr. 263). The claimant next visited Dr. Sumner on August 14, 2012, for a follow-up appointment after he was treated at the Tahlequah City Hospital Emergency Department four days earlier for heat exhaustion and a seizure (Tr. 266-80). A CT scan of the claimant's brain performed on August 10, 2012, was normal (Tr. 274). Dr. Sumner diagnosed the claimant with seizure disorder, and recommended he not drive (Tr. 279). The claimant next sought treatment from Dr. Sumner on November 11, 2013, after he fell from a ladder (Tr. 345). The claimant reported back pain and weakness, but no arthritis, joint pain, joint swelling, muscle cramps, or stiffness (Tr. 345). Dr. Sumner diagnosed the claimant with a lumbar sprain and seizure disorder, and recommended the claimant refrain from heavy lifting (Tr. 346). At a follow-up appointment on December 13, 2013, the claimant reported his back pain was improving, and Dr. Sumner referred him for an EEG, the results of which showed no indication of a seizure disorder (Tr. 336, 344). The claimant returned to Dr. Sumner on February 17, 2014, and reported constant shoulder and back pain (Tr. 341-42). Dr.

Sumner noted there was no strong evidence of a specific problem, and found that the claimant had normal range of motion in his neck (Tr. 341-42).

Additionally, Dr. Sumner filled out a form titled "Residual Functional Capacity to do Work Related Activities" on February 17, 2014 (Tr. 331-35). In it, he opined that during an eight-hour work day, the claimant could sit for one hour at a time, stand for ten- to-thirty minutes at a time, walk for ten-to-thirty minutes at a time, and could do each activity for one hour total (Tr. 331). Dr. Sumner also opined that the claimant could occasionally lift/carry up two twenty pounds, and could never lift/carry anything greater than twenty pounds (Tr. 331). He found the claimant's use of his hands for repetitive movement, including grasping, was limited bilaterally (Tr. 332). Furthermore, Dr. Sumner found that the claimant could occasionally reach, handle, and finger, but could never bend, squat, crawl, climb, or work around unprotected heights (Tr. 332). Dr. Sumner indicated the claimant's bilateral shoulder pain and weakness, as well as his low back pain, supported his opinions (Tr. 332).

On June 12, 2012, Dr. Wojciech Dulowski performed a consultative physical examination (Tr. 257-62). Dr. Dulowski noted the claimant's grip strength was 5/5 with good gross and fine manipulation (Tr. 258). The claimant had equal strength and normal passive range of motion in his upper extremities, but extreme passive range of motion was "very painful" in his right shoulder (Tr. 258). Dr. Dulowski further noted the claimant's gait was slow, safe, and stable, but that he had difficulty walking on his heels and toes due to pain (Tr. 258, 260). As to the claimant's back, Dr. Dulowski found the claimant had decreased lordosis and spasms in his paravertebral muscles, but normal

alignment and passive range of motion (Tr. 258). He assessed the claimant with, *inter alia,* history of chronic back pain, probably mechanical, neurologically intact; history of morbid obesity, history of gout, and history of hypothyroidism (Tr. 258).

Dr. Ronald Schatzman performed a consultative physical examination on May 21, 2013 (Tr. 322-29). He noted the claimant had full range of motion in his lumbosacral spine, cervical spine, and thoracic spine without tenderness, pain, or muscle spasm (Tr. 324, 328). Dr. Schatzman also noted the claimant's gait was safe and stable with appropriate speed, and that his heel walking and toe walking were normal (Tr. 324, 328). The claimant had full range of motion in his shoulders, hands, wrists, and fingers, with full grip strength (Tr. 324-27). Dr. Schatzman assessed the claimant with, *inter alia*, obesity, history of seizures, gout by history, back pain by history, thyroid disease by history, and neck and leg pain by history (Tr. 324).

State reviewing physician Dr. Andrea Fritz completed a Physical Residual Functional Capacity Assessment on October 24, 2012, and found the claimant capable of performing light work with the environmental limitation of avoiding concentrated exposure to hazards (machinery, heights, etc.) due to his seizure history (Tr. 312-20). On June 19, 2013, a second state reviewing physician assessed an identical RFC (Tr. 88-89).

At the administrative hearing, the claimant testified that he was unable to work because of gout, swelling in his feet, low back pain, and problems with his elbows, hands, and grip (Tr. 43). He testified that his back pain is constant, but varies in intensity (Tr. 44, 58-59). The claimant further testified that he is most comfortable in a recliner with his feet elevated, and that he spends three to four hours in that position daily

(Tr. 48). Additionally, he stated that he takes a one hour nap each day to relax his muscles (Tr. 56). Regarding his pain medication, the claimant stated it took off "the sharp edge," and rated his pain at five on a scale of one to ten with medication (Tr. 48). The claimant testified that he could sit for thirty minutes, stand for fifteen minutes, and walk for fifteen minutes (Tr. 49-50). The claimant also testified that he has used a cane since his August 2012 seizure, but forgot to bring it to the hearing (Tr. 51).

In his written opinion, the ALJ determined that the claimant's mild acromioclavicular joint arthropathy was a severe impairment at step two, but neglected to include any limitations corresponding to this impairment in the claimant's RFC at step four or explain why no such limitations were needed (Tr. 20-26). Indeed, most of the analysis at step four was devoted to discrediting the claimant's complaints and essentially calling into question the findings of severity at step two. What the ALJ should have done instead was provide an explanation as to how an impairment found to be severe at step two became so insignificant as to require no corresponding limitations in the RFC at step four. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

Because the ALJ failed to explain how the claimant's severe impairment of mild acromioclavicular joint arthropathy at step two became so insignificant as to require no limitations in his RFC at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in an adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.[4]

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 28th day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The claimant also contended that the ALJ failed to properly evaluate his credibility. At the time of the ALJ's decision, a credibility determination was governed by Soc. Sec. Rul. 96-7p. *See, e .g., Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). But the Commissioner issued a ruling on March 16, 2016, which eliminated the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007), *quoting Sloan v. Astrue,* 499 F.3d 883, 889 (8th Cir. 2007). Although the ALJ's credibility analysis was arguably sufficient under the old standard, the record does not reflect how the ALJ would have evaluated the claimant's subjective statements under Soc. Sec. Rul. 16-3p.[4] Consequently, the ALJ should evaluate the claimant's subjective symptoms in accordance with the new standard on remand.